UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| LOUIS J. PEARLMAN, et al., | ) | Case No.  6:07-bk-00761-KSJ |
| | ) | Chapter 11 |
| Debtor[s]. | ) | |
| | ) | |

| | | |
|---|---|---|
| SONEET R. KAPILA, as CHAPTER 11 | ) | |
| TRUSTEE for TRANS CONTINENTAL | ) | |
| AIRLINES, INC., | ) | |
| | ) | |
| Plaintiff[s], | ) | Adversary No. 6:09-ap-00318-KSJ |
| vs. | ) | |
| | ) | |
| RACHEL BENNETT, | ) | |
| | ) | |
| Defendant[s]. | ) | |
| | ) | |

| | | |
|---|---|---|
| SONEET R. KAPILA, as CHAPTER 11 | ) | |
| TRUSTEE for TRANS CONTINENTAL | ) | |
| AIRLINES, INC., | ) | |
| | ) | |
| Plaintiff[s], | ) | Adversary No. 6:09-ap-00135-KSJ |
| vs. | ) | |
| | ) | |
| GEORGE OR ANNA CERNANSKY, | ) | |
| | ) | |
| Defendants[s]. | ) | |
| | ) | |

| | | |
|---|---|---|
| SONEET R. KAPILA, as CHAPTER 11 | ) | |
| TRUSTEE for TRANS CONTINENTAL | ) | |
| AIRLINES, INC., | ) | |
| | ) | |
| Plaintiff[s], | ) | Adversary No. 6:09-ap-00231-KSJ |
| vs. | ) | |
| | ) | |
| SHERRIL CLARK, | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION DENYING MOTIONS TO DISMISS

The trustee, Soneet Kapila, appointed on behalf of the jointly-administered bankruptcy estate of the debtors[1] (the "Debtors"), seeks to recover profit payments made to defendants[2] under actual and constructive fraud theories of bankruptcy and state law. Defendants have moved to dismiss these claims, arguing the trustee has failed to state a claim for which relief can be granted, lacks standing, and is barred by the *in pari delicto* defense because he represents the Debtors who are perpetrators of a massive Ponzi scheme. Defendants also claim that the funds they received were returns on investments with the Debtors which provided the Debtors with reasonably equivalent value, or alternatively, that the transfers were not of an interest in the Debtors, such that they cannot be avoided.  Defendants' motions to dismiss are denied.

Debtor, Louis J. Pearlman, along with some of his co-debtor companies—Trans Continental Airlines ("TCA"), Trans Continental Records ("TCR"), and Louis J. Pearlman Enterprises ("Enterprises")—bilked thousands of investors out of hundreds of millions of dollars through the perpetration of different Ponzi schemes. The first was known as the "Employee Investment Savings Account" (the "EISA Program"), under which TCA raised over $300 million from hundreds of investors nationwide. Pearlman, his broker intermediaries, and others at TCA allegedly promised investors above-market rates of return for their investments and that their investments were FDIC insured. Neither representation was true. Instead, Pearlman and his cronies pocketed much of the investment funds and used new investments to repay, or to pay interest to, prior investors in the EISA Program.

Like the EISA Program, Pearlman also offered investments in an entity called "Transcontinental Airlines Travel Services, Inc." (the "TCTS Stock Program") which was

---

[1] The debtors in these jointly administered cases are:  Louis J. Pearlman; Louis J. Pearlman Enterprises, Inc.; Louis J. Pearlman Enterprises, LLC; TC Leasing, LLC; Trans Continental Airlines, Inc.; Trans Continental Aviation, Inc.; Trans Continental Management, Inc.; Trans Continental Publishing, Inc.; Trans Continental Records, Inc.; Trans Continental Studios, Inc.; and Trans Continental Television Productions, Inc. (collectively, the "Debtors").

[2] Each of the defendants has filed similar motions to dismiss based on standing, *in pari delicto*, and failure to state a claim. The Cernanskys have asserted an additional basis for their motion to dismiss—that the transfers were not of an interest of the Debtors.

another classic Ponzi scheme in which Pearlman and his associates sold stock in a defunct company that was dissolved in 1999 and had no assets, only to use new investor funds to pay off older investors or themselves. The defendants in this case invested money with the Debtors into one of the two fraudulent investment schemes.[3] Each received from the Debtors a transfer of funds as repayment of their investments within the four years preceding the Debtors' bankruptcy petition. These particular defendants actually recovered *more* than the full balance of their investment in the fraud schemes, an amount the trustee labels "profit." They were the "lucky" few who received their full investment, plus some, back from the Debtors. The profit, however, is why they now are defendants in these fraudulent transfer adversary proceedings.

Since the commencement of these jointly administered bankruptcy cases,[4] the Chapter 11 trustee has filed over 700 adversary proceedings seeking to recover alleged fraudulent transfers. The trustee seeks to avoid and recover only the *profits* the Debtors paid defendants during the two and four years prior to the filing of Pearlman's bankruptcy petition, alleging these transfers were fraudulent and avoidable under Bankruptcy Code[5] §§ 544(b), 548(a)(1)(a) and (b), 550, and comparable Florida statutes.[6] Defendants have filed motions to dismiss these adversary proceedings, arguing (1) the trustee lacks standing to bring these claims, (2) the transfers from the Debtors to defendants provided reasonably equivalent value to defeat the trustee's fraudulent conveyance claims, (3) the trustee is barred from pursuing these recovery actions based on the doctrine of *in pari delicto*, (4) the transfers were not "of an interest in the debtor," such that the trustee could recover them for the estate, and (5) the trustee has failed to state a cause of action for which relief can be granted.

---

[3] Defendant Rachel Bennett invested in the TCTS Stock Program. Doc. No. 11 at 3 in Case No. 9-ap-00318. Defendants George and Anna Cernansky invested in the EISA Investment Program. Doc. No. 12 at 3 in Case No. 9-ap-135. Defendant Sherril Clark invested in the EISA Investment Program. Doc. No. 12 at 3 in Case No. 9-ap-231.
[4] The other jointly administered cases include: Trans Continental Television Productions, Inc., Case No. 07-bk-01856, Trans Continental Aviation, Inc., Case No. 07-bk-02431, Trans Continental Management, Inc., Case No. 07-bk-02432, Trans Continental Publishing, Inc., Case No. 07-bk-04160, Louis J. Pearlman Enterprises, LLC, Case No. 07-bk-01779, and TC Leasing, LLC, Case No. 07-bk-04160.
[5] All references to the Bankruptcy Code are to 11 U.S.C. § 101 *et seq.*
[6] Fla. Stat. §§ 726.105, 726.106 and 726.108 ("FUFTA").

In reviewing a motion to dismiss under Fed. R. Civ. Pro. 12(b)(6),[7] courts must accept the allegations in the complaint as true and construe them in the light most favorable to the plaintiff.[8] Dismissal is appropriate if the plaintiff "can prove no set of facts that would support the claims in the complaint."[9] As the Supreme Court recently has elaborated, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged."[10] A complaint that pleads facts merely consistent with a defendant's liability "stops short of the line between possibility and plausibility of entitlement to relief.'"[11] "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'"[12]

### The trustee has standing to pursue these causes of action.

In their first argument, defendants argue the trustee does not have standing to bring these causes of action because they are not properly categorized as "property of the estate." Defendants argue that these avoidance actions to recover funds for the estate, funds that will be distributed to other injured investors, are not causes of action that the debtor has, but causes of action that only the injured creditors can pursue. Therefore, as defendants argue, the trustee standing in the shoes of debtor has no authority to bring these causes of action.

According to § 701 of the Bankruptcy Code, a trustee has authority to "collect and reduce to money the property of the estate for which such trustee serves."[13] In bankruptcy, "property of the estate" means "all legal or equitable interests of the debtor as of the commencement of the

---

[7] Made applicable to bankruptcy proceedings by Bankruptcy Rule 7012(b)(6).
[8] *Financial Security Assur., Inc. v. Stephens, Inc.*, 450 F.3d 1257, 1262 (11th Cir. 2006).
[9] *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).
[10] *Ashcroft v. Iqbal*, 556 U.S. 662, 663, 129 S. Ct. 1937, 1949 (2009) (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556-57 & 570, 127 S. Ct 1955 (2007)).
[11] *Id.*
[12] *Id.* (*citing* Fed. R. Civ. P. 8(a)(2)).
[13] 11 U.S.C. § 701(a)(1).

case."[14] Defendants cite two Eleventh Circuit cases, *O'Halloran* and *E.F. Hutton*, which fail to support their argument. Both cases limit a bankruptcy trustee's standing to pursue creditors' claims; however, these cases are distinguishable from this case in one very important way—they both hold that a trustee is barred from bringing *common law* causes of action for damages in *tort,* which were uniquely held by the individual creditors involved in those disputes and were subject to the defenses assertable against the debtor.  As defendants point out, the trustee in *O'Halloran* brought a state court action in tort against a bank, at which a debtor maintained an account, for allegedly aiding and abetting the debtor in perpetration of a Ponzi scheme. The Eleventh Circuit Court of Appeals held that the bankruptcy trustee was not the proper party to bring actions for damages because, when a debtor is sued in tort, a trustee acts on behalf of the debtor and is charged with all of the debtor's wrongdoing. The doctrine of *in pari delicto* bars the trustee from benefitting from the debtor's misconduct because the trustee is considered a wrongdoer.[15]

Similarly, in *E.F. Hutton,* the bankruptcy trustee of a debtor who sold securities was denied standing to bring negligence and conversion actions against third parties on behalf of the debtor's creditors.[16] The Eleventh Circuit Court of Appeals reasoned that the trustee's claims were in tort, were not based on provisions in the bankruptcy statute, and were not even owed to the bankruptcy estate, but directly to the injured creditors. The court made clear that its decision was based on the particular facts and circumstances of that case, notably the tort under which the creditors sought to recover. Neither *E.F. Hutton* nor *O'Halloran* addresses a trustee's ability to recover fraudulent transfers under §§ 544 or 548 of the Bankruptcy Code or similar state

---

[14] 11 U.S.C. § 541 (a)(1).

[15] *O'Halloran v. First Union Nat. Bank of Florida*, 350 F.3d 1197, 1201-03 (11th Cir. 2003). See more detailed discussion below regarding the affirmative defense of *in pari delicto.*

[16] *E.F. Hutton & Co., Inc. v. Hadley,* 901 F.2d 979 (11th Cir. 1990).

fraudulent transfer statutes, presumably because these causes of action were not asserted,[17] and because the Code specifically grants a trustee authority to pursue these claims for the benefit of the estate.

It is well recognized that Bankruptcy Code §§ 548 and 544 confer standing on trustees to bring actions to recover fraudulent transfers, both under bankruptcy and state law.  Section § 548(a)(1) provides, "the *trustee* may avoid any transfer . . . of an interest of the debtor in property, or any obligation . . . incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition.[18] Section 544(b)(1) similarly allows a trustee to avoid any transfers which an unsecured creditor could have avoided under applicable state law, in this case, Fla. Stat. § 726.105(1)(a) and § 726.108.[19] Bankruptcy Code § 548 and Fla. Stats. §§ 726.105 and 726.108 are substantially the same, with the exception of Florida's more favorable four-year look-back period, and both allow a trustee to avoid transfers made with the actual intent to hinder, delay, or defraud a creditor of the debtor.[20]

In order to state a fraudulent transfer claim, the trustee must make a plausible showing that there was a transfer of *debtor's* interest in property, the transfer occurred within two (or four) years of the debtor's filing of the petition, and the transfer was made with actual intent to hinder, defraud, or delay, or that the debtor received less than reasonably equivalent value in exchange

---

[17] Defendants cite to these two cases apparently believing, mistakenly, that the trustee is pursuing claims of common law fraud against them. These cases would apply, as would *In re Wiand*, 2007 WL 963162 (M.D. Fla. 2007), if the trustee were pursuing common law actions to recover damages for fraud. The trustee, however, is not seeking damages for fraud, he is seeking to recover monies improperly and fraudulently transferred to defendants.  Recovery of fraudulent transfers merely restores funds to a bankruptcy estate so that all similarly situated creditors are paid *pari pasu*, and no particular creditor receives more than his fair share.

[18] 11 U.S.C. § 548(a)(1). *See In re Martin*, 278 B.R. 634, (Bankr. S. D. Fla. 2002) (allowing a Chapter 7 trustee to pursue fraudulent conveyance actions under §§ 548 and 544).

[19] 11 U.S.C. 544(b)(1) reads: "[T]he *trustee* may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title." (emphasis added). *See In re IFS Financial Corp.*, 417 BR 419, 432 (S.D. Tex. 2009) (noting "Section 544 (b)(1) allows a trustee to avoid transfer that a creditor could avoid under applicable state law (citing *ASARCO LLC, v. Americas Mining Corp.*, 404 B.R. 150, 156 (Bankr. S.D. Tex. 2009); *In re Lewis*, 363 B.R. 477, 480-81 (Bankr. D.S.C. 2007) (stating that there is general agreement that a trustee has standing to avoid transfers and recover property under § 544, 547, 548, and 549 (citing Chapter 13 Bankruptcy 3d ed., Keith M. Lundin, 2000 ed.))

[20] *See In re McCarn's Allstate Finance, Inc.,* 326 B.R. 843, 849 (Bankr. M.D. Fla. 2005).

for the transfer when it knew, or should have known, it lacked the ability to pay.[21]  Indeed, *only the trustee* can bring federal and state law fraudulent transfer actions to recover property for the bankrupt estate.[22] Allowing individual creditors to pursue their own causes of action under state [or federal] law "would interfere with this estate and with the equitable distribution scheme dependent upon it. . . . Any other result would produce near anarchy where the only discernible organizing principle would be first-come-first-served. Even without the Bankruptcy Code and the policies that support it, we would be reluctant to elevate such a principle to a rule of law."[23] Based on the foregoing, the trustee clearly has standing to pursue these causes of action against defendants, each of whom received transfers from the Debtors as a result of their investment in a Ponzi scheme. Defendants' motion to dismiss based on the trustee's lack of standing is denied.

**The defense of *in pari delicto* does not apply to a bankruptcy
<u>trustee who seeks to avoid fraudulent transfers under the Bankruptcy Code</u>.**

Defendants next argue that the trustee is barred from bringing these avoidance causes of action under the equitable doctrine of *in pari delicto*, which states that a "plaintiff who has

---

[21] 11 U.S.C. § 548 reads:

The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily--

    (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or

    (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

    (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

        (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;

        (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or

        (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

[22] *See In re Strom*, 97 B.R. 532, 539 (Bankr. D. Minn. 1989).

[23] *In re Zwirn*  362 B.R. 536, 541 (Bankr. S.D. Fla. 2007) (citing *In re Mortgage America Corp.,* 714 F.2d 1266, 1275–1276 (5th Cir. 1983) (emphasis added)) ("Other courts agree that conferring "blank check" standing on creditors to prosecute avoidance claims creates significant policy concerns because the individual creditor would be acting in its own interest, and not in the interest of all creditors in the Chapter 7 case)(citations omitted).

participated in wrongdoing may not recover damages resulting from the wrongdoing."[24] The

remedy, to leave the wrongdoer parties as the Court finds them, is based on the policy that

"courts should not lend their good offices to mediating disputes among wrongdoers."[25] The issue

here is whether the trustee, who steps into the shoes of a debtor, is labeled as a wrongdoer such

that he cannot avoid transfers because Debtors, as perpetrators of the Ponzi schemes, cannot

avoid the transfers.

Some courts address the equitable defense of *in pari delicto* as a separate issue from

standing.[26] Even if they are discussed together, avoidance actions by a trustee under §§ 544 and

548 are not barred by the *in pari delicto* defense. As a general rule, "[plaintiffs] in fraudulent

conveyance actions [are] not subject to defenses that could be raised against the debtor."[27]

Furthermore, by its own definition, § 548 is an exception to the *in pari delicto* defense. When

application of the doctrine would not be in the public interest, such as where a trustee is seeking

to recover assets fraudulently transferred in furtherance of a Ponzi scheme, courts will allow the

trustee to proceed.[28] As noted previously, the Bankruptcy Code specifically charges the trustee

---

[24] *Official Committee of Unsecured Creditors of PSA, Inc. v. Edwards*  437 F.3d 1145, 1152 (11th Cir. 2006) (citing Black's Law Dictionary 794 (7th ed.1999)).This common law defense "derives from the Latin, *in pari delicto potior est conditio defendentis:* 'In a case of equal or mutual fault ... the position of the [defending] party ... is the better one.'" *Id.*

[25] *Edwards*  437 F.3d at 1152.

[26] *See Perlman v. Wells Fargo*, 2011 WL 5873054 at *6 (S.D. Fla. Nov. 22, 2011) (noting the motion to dismiss state is too early to apply the doctrine of *in pari delicto*  because it is an "affirmative defense requiring the defendant to prove facts, independent of the plaintiff's cause of action."); *In re Fuzion Technologies Group, Inc.*  332 B.R. 225, 230 (Bankr. S.D. Fla. 2005)*(citing* Jeffrey Davis, *Ending the Nonsense: the In Pari Delicto Doctrine Has Nothing to Do with What is Section 541 Property of the Bankruptcy Estate,* 21 Emory Bankr. Dev. J. 519 (2005); Gerald L. Baldwin, *In Pari Delicto Should Not Bar a Trustee's Recovery,* 23–8 Am. Bankr. Inst. J. 8 (2004); Tanvir Alam, *Fraudulent Advisors Exploit Confusion in The Bankruptcy Code: How In Pari Delicto Has Been Perverted To Prevent Recovery for Innocent Creditors,* 77 Am. Bank. L. J. 305 (2003); Robert T. Kugler, *The Role of Imputation and In Pari Delicto in Barring Claims Against Third Parties,* 1 No. 14 Andrews Bankr. Litig. Rep. 13 (2004); *Making Sense of the In Pari Delicto Defense: "Who's Zoomin' Who?"* 23 No. 11 Bankruptcy Law Letter 1 (Nov.2003); *Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.,* 267 F.3d 340, 346–47 (3d Cir. 2001) (citing *In re Dublin Secs., Inc.,* 133 F.3d 377, 380 (6th Cir.1997) (analyzing *in pari delicto* separately from standing)).

[27] *In re Friedman's Inc.,* 372 B.R. 530, 545 (Bankr. N.D. Ga. 2007). *See also In re Fuzion Technologies Group, Inc.* 332 B.R. at 232  (citing *PM Denver, Inc. v Porter (In re Porter McLeod, Inc.),* 231 B.R. 786, 793–95 (D. Colo. 1999); *Terlecky v. Abels*, 260 B.R. 446 (S.D. Ohio 2001) (the trustee was not barred by the defense of *in pari delicto* because the claims for fraudulent conveyances fell under its avoidance powers in the code); *In re Personal and Business Ins. Agency*, 334 F.3d 239, 245 (3d Cir. 2003) (noting the fraudulent conduct of the debtor's owner did not bar the trustee from bringing an avoidance cause of action;

[28] *Fuzion Technologies Group, Inc.,*  332 B.R. at 232.

with the task of recovering *fraudulent transfers* by the debtor for the benefit of the estate.

Holding a trustee lacks standing to pursue these actions would gut a trustee's avoidance powers

entirely. The trustee is not barred by the doctrine of *in pari delicto,* and defendant's motion to

dismiss as to this defense is denied.

### **The trustee has stated causes of action for which relief may be granted.**

The trustee has brought both actual and constructive fraudulent transfer actions under §§

548(a)(1)(A) and (B) of the Bankruptcy Code and comparable Florida statutes. A claim asserting

an actual fraudulent transfer must allege facts sufficient to show that it is plausible that both (1)

the debtor "transferred an interest in property," and (2) the transfer was made "with actual intent

to hinder, delay or defraud creditors." Given the difficulties in establishing a transferor's actual

intent, courts generally look at the totality of the circumstances and the badges of fraud

surrounding the transfers to establish the requisite intent.[29]    But in cases involving a Ponzi

scheme, courts typically infer fraudulent intent because, as this Court has previously stated, "[a]

Ponzi scheme is by definition fraudulent."[30]  For that reason, "any acts taken in furtherance of [a]

Ponzi scheme…are also fraudulent.  Every payment made by the debtor to keep the scheme on-

going [is] made with actual intent to hinder, delay, or defraud creditors, primarily the new

investors."[31]

In this adversary proceeding, the undisputed facts establish Debtors' fraudulent intent

because (1) the Debtors ran a Ponzi scheme, and (2) the Debtors transferred funds to the

---

[29] *Cuthill v. Greenmark (In re World Vision Entertainment, Inc.),* 275 B.R. 641, 656 (Bankr. M.D. Fla. 2002); *McCarn's Allstate Finance,* 326 B.R. at 850. Badges of fraud include, but are not limited to: (1) the transfer was to an insider; (2) the debtor retained possession or control of the property after the transfer; (3) the transfer was concealed; (4) before the transfer was made the debtor had been sued or threatened with suit; (5) the transfer was of substantially all of the debtor's assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) the debtor transferred the essential assets of the business to a lienor who transferred the asset to an insider of the debtor. Fla. Stat. § 726.105(2).

[30] *World Vision,* 275 B.R. at 656; *see also Wiand v. Waxenberg,* 611 F.Supp.2d 1299, 1312 (M.D. Fla. 2009); *In re Old Naples Securities, Inc.,* 343 B.R. 310, 319–20 (Bankr. M.D. Fla. 2006); *In re McCarn's Allstate Finance, Inc.,* 326 B.R. 843, 849–52 (Bankr. M.D. Fla. 2005).

[31] *World Vision,* 275 B.R. at 656. *See also Perkins v. Haines,* 661 F.3d 623, 626 (11th Cir. 2011) (noting "with respect to Ponzi schemes, transfers made in furtherance of the scheme are presumed to have been made with the intent to defraud for purposes of recover the payments under §§ 548(a) and 544(b).").

defendants in repayment of their investments in furtherance of the Ponzi scheme. The trustee has stated a cause of action as to the actual fraudulent transfer counts (Counts I and II in each of the trustee's amended complaints),[32] and the defendants' motions to dismiss on this basis are denied.

Counts III and IV of the trustee's complaint allege the profits defendants received from their investments in the TCTS Stock Program were constructively fraudulent transfers under § 548 of the Code and §§ 726.105(1)(b), 726.106(1), and 726.108(1)(a) of Florida Statutes. Similar to the actual fraudulent transfers, §§ 544(b)(1) and § 550 of the Code allow a trustee to avoid these transfers and recover them for the benefit of the estate.

To state a claim for avoidance of a transfer based upon constructive fraud under bankruptcy and Florida law, the trustee must allege facts sufficient to show the probability that (1) there was transfer of an interest in debtor's property made within two (or four) years prior to the petition, (2) the debtor received "less than a reasonably equivalent value" in exchange for such transfer, and debtor (3)(i) was insolvent on the date that such transfer was made or such obligation was incurred, (ii) was engaged in business with an unreasonably small amount of capital, (iii) intended to incur debts beyond debtor's ability to pay such debts, or (iv) made such transfer to or for the benefit of an insider outside of the ordinary course of business.[33]

The trustee argues he has established a presumption that the transfers to defendants were indeed constructively fraudulent because the transfers occurred within two (or four) years of the petition,[34] at a time when Debtors perpetrated a Ponzi scheme which, by its very nature, rendered them insolvent and caused Debtors to extend debts beyond their ability to repay. Defendants counter that the trustee cannot prove constructive fraud because, in exchange for the transfers to defendants, Debtors received "reasonably equivalent value" because the transfers repaid Debtor's investments and correspondingly reduced Debtors' liability to the defendants.

---

[32] Doc. No. 11 in Adversary Proceeding No. 9-ap-00318; Doc. No. 12 in Adversary Proceeding No. 9-ap-00135; Doc. No. 12 in Adversary Proceeding No. 9-ap-00231.
[33] 11 U.S.C. § 548(a)(1)(B).
[34] *E.g.,* Doc. No. 12, Exhibit A in Case No. 9-ap-231.

In Florida, "value" is given if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied.[35] Thus, loan repayments for a present or antecedent debt normally constitute "reasonably equivalent value" to debtors because, in exchange, a debtor receives "a reduction in the principal and interest of their loan by an equal amount."[36] In the case of a Ponzi scheme, defrauded investors give "value" back to the debtor to the extent a debtor repays the principal amount of its obligation to the investor, but no value is attributed to payments made to investors in excess of a return of principal.[37] "[A]ny transfer up to the amount of the principal investment . . . is made for value . . . .[and is not] subject to recovery by the debtor's trustee."[38] "Transfers over and above the return of the investor's principal investment—i.e., for "fictitious profits—are not made 'for value'" and may be subject to recovery by the trustee.[39]

The trustee is properly seeking to avoid only those transfers to defendants that represent *profits* on their investment with the Debtors, the amounts that exceed each defendant's initial principal investment. Because the Ponzi scheme already was underway, Debtors were by definition presumed insolvent. The defendants' good faith in accepting repayment is irrelevant.[40] The trustee has sufficiently pled a cause of action for constructive fraud, and defendants' motions to dismiss as to Counts III and IV are denied.

Count V of the trustee's amended complaint alleges defendants were unjustly enriched by receiving profits from their investments with the Debtors, and that it would be inequitable to allow defendants to keep these profits. As previously acknowledged, profits obtained in furtherance of a Ponzi scheme are considered "fictitious profits" and, therefore, not real. The

---

[35] Fla. Stat. § 726.104; 11 U.S.C. § 548(d)(2)(A).  *See Perkins,* 661 F.3d at 626.

[36] *Kipperman v. Onex Corp.*, 411 B.R. 805, 851 (N.D. Ga. 2009). *See also In re Colombian Coffee Co., Inc.*, 62 B.R. 542, 545 (Bankr. S.D. Fla.1986).

[37] *Perkins v. Haines*, 661 F.3d 623, 627 (11th Cir. 2011).

[38] *Perkins,* 661 F.3d at 627 (*citing Jobin v. McKay,* 84 F.3d 1330, 1340-42 (10th Cir. 1996); *Wyle v. Rider*, 944 F.2d 589, 596 (9th Cir. 1991)).

[39] *Perkins,* 661 F.3d at 627 (*citing Sender v. Bechanan*, 84 F.3d 1286, 1290 (10th Cir. 1996); *In re United Energy,* 944 F.2d 595, at n.6 (9th Cir. 1991)).

[40] *Perkins*, 661 F.3d at 628–29.

trustee has stated a valid course of action that, if proven, defendants were unjustly enriched when they received payments to the extent they exceed defendants' original investments, and defendants' motion to dismiss Count V is denied.

## Profit payments in a Ponzi scheme
## are recoverable as a debtor's interest in property.

Property of a debtor's estate includes all legal or equitable interest of debtor in property, wherever located and by whomever held.[41] A bankruptcy trustee can recover for the bankruptcy estate transfers made by a debtor by demonstrating the transferred property was "of an interest of the debtor in property."[42] "[A]ny funds under the control of the debtor, regardless of the source, are properly deemed to be the debtor's property, and any transfers that diminish that property are subject to avoidance."[43] A debtor must have exercised "sufficient control over the funds to warrant a finding that the funds were the debtor's property."[44] Sufficient control means "first, the power to designate which party will receive the funds; and, second, the power to actually disburse the funds at issue to that party. In other words, control means control over identifying the payee, and control over whether the payee will actually be paid."[45] The purpose of avoiding fraudulent transfer actions is to prevent a debtor from diminishing property that properly belongs to all creditors.[46] In the Eleventh Circuit, "where a debtor has paid existing debts [to its creditors], the funds used as payment are presumed to be the debtor's property absent some proof to the contrary offered by those defending the transfer."[47]

The Cernanskys argue that the profits they received from their investments with the Debtors are not avoidable because they are not, and never were, the Debtors' property. The

---

[41] 11 U.S.C. § 541(a)(1).

[42] 11 U.S.C. §§ 544(b)(1) and 548(a)(1) ("The trustee may avoid any transfer . . . of an interest of the debtor in property….").

[43] *Nordberg v. Sanchez (In re Chase & Sanborn Corp)*, 813 F.2d 1177, 1181 (11th Cir. 1987).

[44] *In re Chase & Sanborn Corp*, 813 F.2d at 1180 (11th Cir. 1987).

[45] *In re Pearlman*, 460 B.R. 306, 314 (Bankr. M.D. Fla. 2011) (citing *In re Bankest Capital Corp.,* 374 B.R. 333, 338 (Bankr. S.D. Fla. 2007)).

[46] *Id.*

[47] *Chase*, 813 F.2d at 1181 (*citing Larose v. Bourg*, 45 B.R. 693, 697 (Bankr. M.D. La 1985). In contrast, funds transfers to non-creditors are not presumed fraudulent; instead a court must look to the totality of the circumstances of the case. *Id.*

Cernanskys instead urge the Court to find that their funds were held in a constructive trust or bailment relationship, or created an equitable lien, and that the Cernanskys invested and maintained control over them at all times. They argue that, when they deposited money with the Debtors, they intended that money to be placed in a separate and segregated account.[48] In essence, defendants claim they used Debtors and their affiliates merely as holding companies, or "temporary conduits," but always intended to retain individual ownership and control over their funds such that they never became property of the estate.

The Cernanskys' argument, at best, raises a possible defense that would require factual proof and is well beyond the scope of a motion to dismiss. But, even if they did present sufficient evidence proving they intended to maintain control over their investments, the defense has questionable validity. None of the funds invested in the Ponzi schemes were actually invested. Therefore, even if defendants somehow prove they completely controlled their accounts, they would not be entitled to the investment profits because they never actually earned or realized any true profit. The monies the Cernanskys received necessarily came from investments from other defrauded investors.  The argument makes little sense, and segregation of their funds does not alter the outcome. Therefore, whether the defendants actually controlled their investments in Debtors' Ponzi scheme is irrelevant as to the *profits* the trustee seeks to recover.

In summary, all of defendants' motions to dismiss are denied. Separate orders consistent with this ruling and directing the defendants to file answers shall be issued in each of the above styled cases.

DONE AND ORDERED in Orlando, Florida, on May 25, 2012.

_____
KAREN S. JENNEMANN
United States Bankruptcy Judge

---

[48] Doc. No. 14 at ¶ 32-36 in Case No. 9-ap-135.

Copies provided to:

Plaintiff's Counsel:  James E. Foster, Akerman Senterfitt, P.O. Box 231, Orlando, FL  32802

Defendant's Counsel:  David S. Cohen, 5728 Major Blvd., Suite 550, Orlando, FL  32819

Defendants' Counsel:  Patrick A. Davis, P.O. Box 15933, Clearwater, FL  33766

Defendant's Counsel:  Glifford J. Geismar, 2431 Aloma Ave., Suite 153, Winter Park, FL  32792